IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| HAWAIYA TECHNOLOGIES, INC.; PAUL SCHULTZ, an individual; MUN-WON CHANG, an individual; PAUL SCHULTZ, as Co-Trustee of the Paul S. Schultz Revocable Trust; MUN-WON CHANG, as Co-Trustee of the Paul S. Schultz Revocable Trust;  PAUL SCHULTZ, as Co-Trustee of the Mun-Won Chang Revocable Trust; MUN-WON CHANG, as Co-Trustee of the Mun-Won Chang Revocable Trust; JANE WON-IM CHANG, as Co-Trustee of the Jane Won-Im Chang Revocable Trust;  PAUL SCHULTZ, as Co-Trustee of the Jane Won-Im Chang Revocable Trust; MUN-WON CHANG, as Co-Trustee of the Jane Won-Im Chang Revocable Trust, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Civil No. 18-00410 HG-WRP

**ORDER DENYING PLAINTIFF LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 44)**

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") brought this diversity action to collect indemnification from Defendants for payments made on a construction surety bond.

Liberty Mutual filed a Motion for Partial Summary Judgment

1

as to Count I (Breach of Contract), Count II (Unjust Enrichment), and Count III (Quia Timet) of the Complaint.

The Motion for Partial Summary Judgment is brought against Defendants Hawaiya Technologies, Inc. ("HTI") and Paul Schultz and Mun-Won Chang, as individuals. The Motion is also against Paul Schultz and Mun-Won Chang, as Co-Trustees of the Paul S. Schultz Revocable Trust and the Mun-Won Chang Revocable Trust.

Defendant Co-Trustees of the Jane Won-Im Chang Trust, Paul Schultz, Mun-Won Chang, and Jane Won-Im Chang, are not included in the motion.

HTI was a subcontractor on a construction project at Halawa Correctional Facility, operated by the State of Hawaii.

Paul Schultz is the President and Chief Executive Officer of HTI. Mun-Won Chang is an officer at HTI.

Liberty Mutual issued surety bonds in connection with HTI's subcontract in exchange for an indemnity agreement.

Liberty Mutual's Motion for Partial Summary Judgment (ECF No. 44) is **DENIED**.

### PROCEDURAL HISTORY

On October 25, 2018, Plaintiff Liberty Mutual filed the Complaint. (ECF No. 1).

On November 15, 2018, Defendants filed their Answer to the Complaint. (ECF No. 11).

On September 18, 2019, Liberty Mutual filed a Motion for

Partial Summary Judgment and a Concise Statement of Facts against Defendants Hawaiya Technologies, Inc. ("HTI") and Paul Schultz and Mun-Won Chang, as individuals.  The motion is also against Paul Schultz and Mun-Won Chang, as Co-Trustees of the Paul S. Schultz Revocable Trust and the Mun-Won Chang Revocable Trust. (ECF Nos. 44, 45).

On October 16, 2019, Defendants HTI and Paul Schultz and Mun-Won Chang, as individuals, as well as, Paul Schultz and Mun-Won Chang, as Co-Trustees of the Paul S. Schultz Revocable Trust and the Mun-Won Chang Revocable Trust, filed their Opposition to the Motion for Partial Summary Judgment and a Concise Statement of Facts.  (ECF Nos. 54, 55).

On October 30, 2019, Liberty Mutual filed its Reply.  (ECF No. 57).

On November 13, 2019, the Court held a hearing on Liberty Mutual's Motion for Partial Summary Judgment.  (ECF No. 63).

On January 29, 2020, the Court held a Status Conference. (ECF No. 86).

On February 7, 2020, the Court issued the scheduling order. (ECF No. 87).

## BACKGROUND

The following facts are not in dispute:

## The Halawa Construction Project

On October 20, 2015, BCP Construction of Hawaii, Inc. ("BCP

Construction") was awarded a $9,751,064.00 construction contract by the State of Hawaii. (Decl. of Luis Aragon at ¶ 5, attached as Ex. 1 to Pl.'s CSF, ECF No. 45-1). BCP Construction was tasked with replacing the electronic locking system and security electronics system at the Halawa Correctional Facility. (Decl. of Mun-Won Chang at ¶¶ 9-11, attached as Ex. 1 to Defs.' CSF, ECF No. 55-1).

Sierra Detention Systems, Inc. ("Sierra") and Defendant Hawaiya Technologies, Inc. ("HTI") made a joint bid to serve as BCP Construction's subcontractor on the project. (Id. at ¶ 13) Instead, BCP Construction agreed to enter into separate contracts with Sierra and HTI. (Id.)

HTI's scope of work consisted of supplying the materials and labor necessary to install electronic security upgrades. (Id. at ¶ 15; Subcontract, attached as Ex. B to Defs.' CSF, ECF No. 55-3).

Sierra agreed to provide HTI with project drawings and to train and supervise HTI's installation work. (Decl. of Mun-Won Chang ¶ 14, attached as Ex. 1 to Defs.' CSF, ECF No. 55-1; Sierra Scope of Work, attached as Ex. C to Defs.' CSF, ECF No. 55-4). In May 2017, CML Security, LLC ("CML Security" or "CML-RW") took over Sierra's responsibilities after Sierra abandoned the project. (Decl. of Mun-Won Chang ¶ 18, attached as Ex. 1 to Defs.' CSF, ECF No. 55-1; February 19, 2019 Vertex Audit Report, attached as Ex. JJ to Defs.' CSF, ECF No. 55-37).

**Liberty Mutual Surety Bonds and The Indemnity Agreement**

After signing the Subcontract with BCP Construction, HTI secured a performance bond and payment bond (the "Bonds") from Plaintiff Liberty Mutual Insurance Co. ("Liberty Mutual"). (Bonds, attached as Ex. 4 to Pl.'s CSF, ECF No. 45-5). The maximum amount due under the Bonds was the full cost of the Subcontract. (Id.)

In exchange for Liberty Mutual's issuance of the Bonds, HTI, Paul Schultz ("Schultz"), and Mun-Won Chang ("Chang") agreed to indemnify Liberty Mutual for payments made on the Bonds. (General Agreement of Indemnity, attached as Ex. 1 to Pl.'s CSF, ECF No. 45-2). Schultz is the President and Chief Executive Officer of HTI. (Id.) Chang is an officer at HTI. (Decl. of Mun-Won Chang at ¶ 2, attached as Ex. 1 to Defs.' CSF, ECF No. 55-1).

On April 4, 2016, Schultz and Chang, as Co-Trustees of the Paul S. Schultz Revocable Trust and the Mun-Won Chang Revocable Trust, agreed to further indemnify Liberty Mutual on the Bonds.[1] (Amendment to the General Agreement of Indemnity, attached as Ex. 2 to Pl.'s CSF, ECF No. 45-3).

The General Agreement of Indemnity (the "Agreement") between the parties requires the indemnitors to repay Liberty Mutual for

---

[1] Schultz and Chang hold certain interests in real property as co-trustees of the Paul S. Schultz Revocable Trust and the Mun-Won Chang Revocable Trust.

any disbursements on the Bonds made under the "good faith" determination that Liberty Mutual faces "potential liability." (General Agreement of Indemnity, attached as Ex. 1 to Pl.'s CSF, ECF No. 45-2).

**Performance Disputes Between BCP Construction and HTI**

On April 4, 2018, BCP Construction informed HTI that water damage had caused short circuiting and corrosion to security electronics systems installed at the Halawa work site. (April 4, 2018 48-hour Notice, attached as Ex. D to Defs.' CSF, ECF No. 55-5).

The source of the water leakage was determined to be non-rain-tight conduit couplers installed on the exteriors of a building by HTI. (HTI Report, attached as Ex. F to Defs.' CSF, ECF No 55-7). According to the State of Hawaii and BCP Construction, the couplers were not approved for exterior use at the Halawa site. (State of Hawaii Non-Conformance Notice, attached as Ex. H to Defs.' CSF, ECF No. 55-9; May 8, 2018 Meeting Minutes, attached as Ex. N to Defs.' CSF, ECF No. 55-15).

On May 2, 2018, BCP Construction provided HTI with notice that the conduit couplers did not conform with code or the requirements of the Subcontract. (May 2, 2018 48-hour Notice, attached as Ex. I to Defs.' CSF, ECF No. 55-10). The notice stated that HTI's failure to remedy the issue could result in termination. (Id.)

HTI made multiple proposals to bring the couplers into compliance. (April 13, 2018 Remedial Proposal, attached as Ex. E to Defs.' CSF, ECF No. 55-6; April 25, 2018 Remedial Proposal, attached as Ex. G to Defs.' CSF, ECF No. 55-8; May 18, 2018 Remedial Proposal, attached as Ex. OO to Defs.' CSF, ECF No. 55-42). HTI's strategy in all of its proposals was to cover the conduit couplers in a manner such that interior building codes, which permit non-rain-tight conduit couplers, rather than exterior building codes would apply. (Id.)

BCP Construction, HTI, and the State of Hawaii held multiple meetings to discuss HTI's proposed solutions. (May 8, 2018 Meeting Minutes, attached as Ex. N to Defs.' CSF, ECF No. 55-15; April 25, 2018 Remedial Proposal, attached as Ex. G to Defs.' CSF, ECF No. 55-8 (referencing an April 24, 2018 meeting)). There is no evidence before the Court that HTI's proposals were either accepted or rejected by the State of Hawaii, the party who was required to approve any remedy.

**Subcontract Termination and Investigation**

On May 12, 2018, BCP Construction, as obligee on the Bonds, sent a demand against the Performance Bond to Liberty Mutual based on HTI's alleged default on the Subcontract. (May 12, 2018 Demand Letter, attached as Ex. 5 to Pl.'s CSF, ECF No. 45-6). BCP Construction then terminated HTI for a variety of allegations of default including the installation of the non-compliant

conduit couplers.  (May 15, 2018 Termination Letter, attached as Ex. 6 to Pl.'s CSF, ECF No. 45-7).

After receiving the demand letter, Liberty Mutual investigated BCP Construction's claim.  (June 6, 2018 Liberty Mutual Letter, attached as Ex. X to Defs.' CSF, ECF No. 55-25; June 18, 2018 Vertex Report, attached as Ex. KK to Defs.' CSF, ECF No. 55-38; June 26, 2018 Investigation Letter, attached as Ex. Z to Defs.' CSF, ECF No. 55-27).

In its investigation, Liberty Mutual received and considered documents from both HTI and BCP Construction and spoke separately with each party over the phone.  (Id.)  Liberty Mutual also employed local counsel and a construction consultant, The Vertex Companies, Inc. ("Vertex"), to help assess the validity of BCP Construction's claims.  (June 26, 2018 Investigation Letter, attached as Ex. Z to Defs.' CSF, ECF No. 55-27).  Vertex made multiple site visits on Liberty Mutual's behalf and compiled its own report summarizing its findings.  (June 18, 2018 Vertex Report, attached as Ex. KK to Defs.' CSF, ECF No. 55-38).

Liberty Mutual determined that BCP Construction's termination of HTI's Subcontract was valid based on HTI's installation of non-rain-tight conduit couplers in exterior areas.  (June 26, 2018 Investigation Letter, attached as Ex. Z to Defs.' CSF, ECF No. 55-27).

**Liberty Mutual Payment and Indemnification Request**

In July 2018, Liberty Mutual made a $2,448,206.40 Bond Buy-Back payment to BCP Construction on behalf of HTI. (Bond Buy-Back Agreement, at ¶ 4, p. 2, attached as Ex. 7 to Pl.'s CSF, ECF No. 45-8).

Liberty Mutual has made multiple requests for HTI, Schultz, and Chang to deposit cash or property sufficient to indemnify Liberty Mutual for its expenditures. (Liberty Mutual Indemnification Requests, attached as Ex. 8-9 to Pl.'s CSF, ECF Nos. 45-9, 45-10). Defendants have received the requests but have not supplied any collateral or otherwise indemnified Liberty Mutual.

On October 25, 2018, Liberty Mutual filed the Complaint in this case alleging the Defendants breached the Agreement by refusing to indemnify Liberty Mutual for its payments on the Bonds. (Complaint, ECF No. 1).

In February 2019, Liberty Mutual hired Vertex for a second time, this time to audit how BCP Construction utilized the July 2018 Bond Buy-Back payment. (February 19, 2019 Vertex Audit Report, attached as Ex. JJ to Defs.' CSF, ECF No. 55-37). Vertex found that BCP Construction had spent $1,774,707.01 of the $2,448,206.40 paid by Liberty Mutual. (Id. at p. 13). Vertex concluded that at least $1,031,667.69 of BCP Construction's expenditures were misspent on materials and labor not within

HTI's scope of work and not chargeable to Liberty Mutual. (Id.)

In April 2019, the State of Hawaii declared BCP Construction in default. (April 12, 2019 Travelers Demand Letter, attached as Ex. 11 to Pl.'s CSF, ECF No. 45-12). Travelers Casualty and Surety Company of America, BCP Construction's surety, stepped in to complete the project.[2] Travelers made a demand on Liberty Mutual for further payment to complete the scope of work in HTI's defaulted subcontract. (Id.) On June 14, 2019, Liberty Mutual agreed to make a $630,284.60 payment to Travelers to settle any remaining obligations Liberty Mutual may have had to Travelers due to HTI's default. (June 14, 2019 Settlement Agreement, at ¶ 3, p. 3, attached as Ex. 12 to Pl.'s CSF, ECF No. 45-13).

The Defendants named in this motion argue that they are not required to indemnify Liberty Mutual because HTI was not in default of the Subcontract and the Subcontract termination was improper. They claim Liberty Mutual's payments to BCP Construction and Travelers were unreasonably large and were not made in good faith.

Liberty Mutual seeks to be reimbursed for the $2,448,206.40 July 2018 payment, the $630,284.60 April 2019 payment, and $249,417.24 in fees and costs.

---

[2] Travelers is seeking indemnification from BCP Construction in a separate action. See Travelers Casualty and Surety Company of America v. BCP Construction of Hawaii, Inc., et al., 19-cv-00140 DKW-WRP.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing

party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an

issue of material fact.  Hansen v. United States, 7 F.3d 137, 138
(9th Cir. 1993); see also National Steel Corp. v. Golden Eagle
Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).


## ANALYSIS

Plaintiff Liberty Mutual brings this partial summary
judgment motion against Defendants Hawaiya Technologies, Inc.
("HTI") and Paul Schultz ("Schultz") and Mun-Won Chang ("Chang"),
as individuals.  The motion is also against Schultz and Chang, as
Co-Trustees of the Paul S. Schultz Revocable Trust and the Mun-
Won Chang Revocable Trust (collectively, the "Indemnitor
Defendants" or "Indemnitors").

BCP Construction was hired by the State of Hawaii to replace
the electronic locking system and security electronics system at
the Halawa Correctional Facility.  (Decl. of Mun-Won Chang ¶¶ 9-
11, attached as Ex. 1 to Defs.' CSF, ECF No. 55-1).  HTI and
Sierra Detention Systems, Inc. ("Sierra") made a joint bid to
serve as the subcontractor on the project.  (Decl. of Mun-Won
Chang at ¶¶ 9-11, attached as Ex. 1 to Defs.' CSF, ECF No. 55-1).

Rather than issue one subcontract, BCP Construction hired
HTI to supply the materials and labor necessary to install
electronic security upgrades at Halawa Correctional Facility.
(Id. at ¶ 15; Subcontract, attached as Ex. B to Defs.' CSF, ECF
No. 55-3).  Sierra was hired under a separate subcontract to

provide drawings and supervise HTI's installation work. (Decl.
of Mun-Won Chang ¶ 14, attached as Ex. 1 to Defs.' CSF, ECF No.
55-1; Sierra Scope of Work, attached as Ex. C to Defs.' CSF, ECF
No. 55-4). In May 2017, CML Security, LLC ("CML Security" or
"CML-RW") took over Sierra's responsibilities after Sierra
abandoned the project. (Decl. of Mun-Won Chang ¶ 18, attached as
Ex. 1 to Defs.' CSF, ECF No. 55-1).

Liberty Mutual served as HTI's surety and issued both a
performance and payment bond on the project (the "Bonds").
(Bonds, attached as Ex. 4 to Pl.'s CSF, ECF No. 45-5).

In exchange for Liberty Mutual's issuance of the Bonds, HTI,
Schultz, and Chang, as individuals and officers of HTI, agreed to
indemnify Liberty Mutual for payments made on the Bonds.
(General Agreement of Indemnity, attached as Ex. 1 to Pl.'s CSF,
ECF No. 45-2).

Later, Schultz and Chang, as Co-Trustees of the Paul S.
Schultz Revocable Trust and the Mun-Won Chang Revocable Trust,
agreed to further indemnify Liberty Mutual on the Bonds.[3]
(Amendment to the General Agreement of Indemnity, attached as Ex.
2 to Pl.'s CSF, ECF No. 45-3).

Liberty Mutual made payments on the Bonds following BCP
Construction's termination of HTI's contract. Indemnitor

---

[3] Schultz and Chang hold certain interests in real property
as co-trustees of the Paul S. Schultz Revocable Trust and the
Mun-Won Chang Revocable Trust.

Defendants have refused to reimburse Liberty Mutual for its payments.

Liberty Mutual seeks partial summary judgment against the Indemnitor Defendants for breach of contract, unjust enrichment, and quia timet.

## I.    Liberty Mutual's Obligations And Duties As A Surety

Liberty Mutual, as a surety, owes a duty of good faith and fair dealing to both the principal of the Bonds, HTI, and the Bonds' obligee, BCP Construction.  See Bd. of Directors of Ass'n of Apartment Owners of Discovery Bay Condo. v. United Pac. Ins. Co., 884 P.2d 1134, 1137 (Haw. 1994).  A surety must perform its duties reasonably and in good faith because a covenant of good faith and fair dealing is implied in every insurance contract. Best Place, Inc. v. Penn Am. Ins. Co., 920 P.2d 334, 346 (Haw. 1996), as amended (June 21, 1996); Yakima Co. v. Lincoln Gen. Ins. Co., 583 F. App'x 744, 746 (9th Cir. 2014) (holding the implied covenant of good faith applicable in the surety context).

Good faith in an indemnity agreement is satisfied "if there is no bad faith or wrongful motive on the part of the [surety]." U.S. Fid. & Guar. Co. v. Stanley Contracting, Inc., 303 F. Supp. 2d 1169, 1172 (D. Or. 2004).  Conduct based on a reasonable interpretation of the insurance contract does not constitute bad faith.  Best Place, 920 P.2d at 346.  Objectively unreasonable conduct can be a breach of the covenant of good faith regardless

15

of the surety's motive.  Arntz Contracting Co. et al. v. St. Paul
Fire and Marine Insurance Company, 54 Cal.Rptr.2d 888, 899
(citing Carma Developers (Cal.), Inc. v. Marathon Development
California, Inc., 826 P.2d 710, 729 (Cal. 1992).

The adequacy of a surety's investigation is one of the most
important factors in considering if the surety acted in good
faith.  Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of
Pittsburg, PA, 2014 WL 4909103, at *37 (S.D. Cal. Sept. 30,
2014).  The parties to an indemnification agreement can expect
that a surety will only settle after "reasonable investigation of
the claims, counterclaims, and possible defenses."  U.S. for use
of Trustees of Elec. Workers Local Pension Fund v. D Bar D
Enterprises, Inc., 772 F. Supp. 1167, 1170 (D. Nev. June 27,
1991).  Whether a surety's investigation was reasonable "must be
determined on case by case basis and will depend on the
contractual purposes and reasonably justified expectations of the
parties."  Fresno Rock Taco, LLC v. Nat'l Sur. Corp., 2012 WL
3260418, at *13 (E.D. Cal. Aug. 8, 2012) (internal quotations
omitted).

The reasonableness of an insurer's claims-handling conduct
is ordinarily a question of fact.  Amadeo v. Principal Mut. Life
Ins. Co., 290 F.3d 1152, 1161 (9th Cir. 2002).  Reasonableness is
a question of law suitable for summary judgment "when the facts
are undisputed and not fairly susceptible of divergent
inferences, because, where, upon all the evidence, but one

16

inference may reasonably be drawn, there is no issue for the jury." Willis v. Swain, 304 P.3d 619, 637 (Haw. 2013) (quoting Guajardo v. AIG Hawai'i Ins. Co., 187 P.3d 580, 590 (Haw. 2008) (internal quotations omitted)).

The general rule is that the burden of proving reasonableness and good faith is on Liberty Mutual, the indemnitee. Hawaiian Ins. & Guar. Co. v. Higashi, 675 P.2d 767, 769 (Haw. 1984). Where, as here,[4] a provision of an indemnity agreement states that the payment of funds by the indemnitee is prima facie evidence of the propriety, amount, and existence of liability, the burden of proof to show a lack of good faith falls on the indemnitor. Id.; see also Old Republic Ins. Co. v. City Plan Dev., Inc., 2018 WL 283250, at *5 (D. Nev. Jan. 3, 2018); Travelers Cas. v. Dunmore, 2016 WL 6611184, at *2 (E.D. Cal. Nov. 9, 2016).

## II. **Breach of Contract**

Plaintiff's breach of contract claim is based on the Indemnitor Defendants' alleged failure to perform their obligations under the General Agreement of Indemnity (the "Agreement"). (General Agreement of Indemnity, attached as Ex. 1 to Pl.'s CSF, ECF No. 45-2).

---

[4] The prima facie clause of the Indemnity Provision of the Agreement reads, in part, "the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety." (General Agreement of Indemnity, attached as Ex. 1 to Pl.'s CSF, ECF No. 45-2).

Under Hawaii law, to prevail on a claim for breach of contract, a party must prove: "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract." Evergreen Eng'g, Inc. v. Green Energy Team LLC, 884 F.Supp.2d 1049, 1059 (D. Haw. July 31, 2012).

It is undisputed that the Agreement is the contract at issue (Element One) and that Liberty Mutual and the Indemnitor Defendants are the parties to that contract (Element Two). The Agreement requires that the Indemnitor Defendants indemnify Liberty Mutual for reasonable payments made in good faith (Element Four). Indemnitor Defendants have refused to reimburse Liberty Mutual for payments made on the Bonds. (Element Five).

The parties' dispute hinges on the third element of the breach of contract claim: Liberty Mutual's performance under the Agreement.

## A.    Liberty Mutual's Investigation And Determination Of Potential Liability

The Agreement entitles Liberty Mutual, in its sole judgment, to make disbursements for all potential liability it determines it faces under the Bonds. (General Agreement of Indemnity, attached as Ex. 1 to Pl.'s CSF, ECF No. 45-2). Liberty Mutual is entitled to seek reimbursement from the Indemnitor Defendants for

18

all disbursements made under the good faith belief that Liberty Mutual is, was, or might be liable for the sums disbursed.[5]

(Id.) The Agreement requires Indemnitor Defendants to reimburse Liberty Mutual for all good faith disbursements made to cover potential liability. (Id.)

Liberty Mutual only faces potential liability under the Bonds when three conditions are met: HTI is in default, Liberty Mutual receives notice of a default by HTI, and BCP Construction

---

[5] The Indemnity Provision of the Agreement reads, in part:

SECOND: INDEMNITY – **The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability** for losses, fees costs, and expenses of whatsoever kind or nature...**If the Surety determines, in its sole judgment, that potential liability exists for losses and/or fees, costs and expenses for which the Indemnitors and Principals will be obliged to indemnify the Surety** under the terms of this Agreement or Other Agreements, the Indemnitors and/or Principals shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability...In the event of any payment by the Surety, the Indemnitors and Principals further agree that in any accounting between the Surety and the Principals, or between the Surety and the Indemnitors, or either or both of them, **the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement or Other Agreements under the belief that it is, or was, or might be liable for the sums and amounts so disbursed** or that it was necessary or expedient to make such disbursements, **whether or not such liability, necessity or expediency existed...**

(General Agreement of Indemnity, attached as Ex. 1 to Pl.'s CSF, ECF No. 45-2) (emphasis added).

is not in default.[6]  (Bonds, attached as Ex. 4 to Pl.'s CSF, ECF No. 45-5).

A party must perform its own obligations under the contract to succeed on a claim for breach of contract.  Evergreen Eng'g, Inc., 884 F.Supp.2d at 1059.

Indemnitor Defendants allege there is a genuine dispute of fact regarding whether Liberty Mutual's determination that it faced potential liability under the Agreement was proper and made in good faith.

### 1.    There Is A Genuine Dispute Of Fact Regarding Whether HTI Was In Default

There are material issues of disputed fact regarding whether HTI defaulted on the Subcontract by installing non-code compliant conduit couplers.

A default under the Subcontract occurs when HTI "persistently or repeatedly fails or neglects to carry out the work in accordance with the contract documents, or otherwise fails to perform in accordance with th[e] subcontract." (Subcontract art. 13, attached as Ex. B to Defs.' CSF, ECF No. 55-3).  Section 1.2 of the Subcontract requires that HTI perform its work in accordance with, among other things, all codes,

_____

[6] "Liberty Mutual must perform on the Bonds "[w]henever [HTI] shall be, and be declared by [BCP Construction] to be in default under the subcontract, [BCP Construction] having performed [BCP Construction's] obligations thereunder."  (Bonds, attached as Ex. 4 to Pl.'s CSF, ECF No. 45-5).

government agency requirements, and industry standards.  (Id. at § 1.2).

In May 2018, the State of Hawaii and BCP Construction determined that conduit couplers installed by HTI were not compliant with code, industry standards, or the project specifications.  (State of Hawaii Non-Conformance Notice, attached as Ex. H to Defs.' CSF, ECF No. 55-9; May 8, 2018 Meeting Minutes, attached as Ex. N to Defs.' CSF, ECF No. 55-15).

The State identified the couplers as being non-compliant with National Electric Code § 225.22 (requiring raceways on exterior structures to be approved for use in wet locations) and National Electric Code § 314.15 (requiring exterior conduits to be listed for use in damp or wet locations).  (May 8, 2018 Meeting Minutes, attached as Ex. N to Defs.' CSF, ECF No. 55-15). The State further identified the couplers as being non-compliant with Project Specifications §§ 16100-7 and 16100-8.   (State of Hawaii Non-Conformance Notice, attached as Ex. H to Defs.' CSF, ECF No. 55-9).  BCP Construction concurred with the State's assessment.   (May 2, 2018 48-hour Notice, attached as Ex. I to Defs.' CSF, ECF No. 55-10).

After receiving notice of HTI's termination, Liberty Mutual hired a construction consultant, The Vertex Companies, Inc. ("Vertex"), to investigate BCP Construction's claims.  (June 26, 2018 Investigation Letter, attached as Ex. Z to Defs.' CSF, ECF No. 55-27).  Based on Vertex's report and on its own

investigation, Liberty Mutual found that HTI's coupler installation violated Project Specifications § 16100-2, Paragraphs 2.02A and B, § 16100-7, Paragraph 3.01I, and § 17010-4, Paragraph 3.01C1f. (June 26, 2018 Investigation Letter at n. 1-2, attached as Ex. Z to Defs.' CSF, ECF No. 55-27). Liberty Mutual also found the coupler installation violated National Electric Code § 314.15. (Id.)

Indemnitor Defendants have the burden of presenting evidence of a genuine dispute of fact. Hawaiian Ins. & Guar. Co. v. Higashi, 675 P.2d 767, 769 (1984); (General Agreement of Indemnity, attached as Ex. 1 to Pl.'s CSF, ECF No. 45-2).

Indemnitor Defendants have presented evidence that Sierra and CML Security were responsible for designing the project and providing the drawings to HTI. (Subcontract at pp. 33, 37, attached as Ex. B to Defs.' CSF, ECF No. 55-3; Decl. of Mun-Won Chang at ¶¶ 11-15, attached as Ex. 1 to Defs.' CSF, ECF No. 55-1). Indemnitor Defendants have put forth evidence that HTI's subcontract required it to install the couplers in question under the supervision of Sierra and CML Security. (Decl. of Mun-Won Chang at ¶¶ 22-24, attached as Ex. 1 to Defs.' CSF, ECF No. 55-1). Defendants allege that as the on-the-ground labor force they were appropriately following the project design when they installed the interior-certified couplers in exterior locations. (Id.) Defendants claim the propriety of their work is

22

demonstrated by BCP Construction's initial approval of the installation.

Liberty Mutual acknowledges that because Sierra and HTI's initial joint bid was divided into two separate subcontracts there was confusion throughout the project on the roles and responsibilities of the subcontractors.[7]  (June 26, 2018 Investigation Letter at p. 1, attached as Ex. Z to Defs.' CSF, ECF No. 55-27).  Neither party has provided the allegedly violated Project Specifications or clarified how the three subcontractors' responsibilities and performance related to the alleged default.

Based on the evidence before the Court, there are genuine disputes of fact regarding the duties of HTI and the other subcontractors under the Project Specifications.  Viewing the evidence in the light most favorable to non-movants, there is a genuine dispute of fact as to whether HTI was responsible for the coupler issue.

> ### 2. There Is A Genuine Dispute Of Fact As To Whether HTI Commenced Correction Of Its Default Before Being Terminated

Assuming that HTI was in default, the Subcontract required HTI "to commence and/or continue correction of such default or

---

[7] The broader issues related to BCP Construction and its subcontractors' performance are the subject of litigation in the Circuit Court of the First Circuit, State of Hawaii.  See Hawaiya Technologies v. BCP Construction of Hawaii, 1-cc-19-100052.

neglect with diligence and promptness" to avoid termination. (Subcontract art. 13, attached as Ex. B to Defs.' CSF, ECF No. 55-3).

Indemnitor Defendants claim that they promptly commenced correction of the coupler default, as required by the Subcontract, before they were terminated.

Improper termination is grounds for a surety to refuse to perform on its bonds. Duncan L. Clore, Bond Default Manual, 74, 2nd Ed. (ABA 1995). An "obligee's wrongful termination of the bonded contract is itself a breach of contract that relieves the surety of liability under its performance bond." (Id.)

Within days of learning of the alleged coupler default, HTI states that they applied water tight sealant to the couplers as a short term solution to prevent continued water damage. (Decl. of Mun-Won Chang at ¶ 23, attached as Ex. 1 to Defs.' CSF, ECF No. 55-1). HTI then began developing a remedial plan to bring the couplers into compliance.

Any long-term solution to the coupler issue needed to be approved by the State of Hawaii before it could be implemented. Indemnitor Defendants indicate that HTI made two proposals to fix the conduit issue between the time it was notified of the leak on April 4, 2018, and the time it was terminated, on May 15, 2018. HTI met with the State and BCP Construction to discuss its proposals on April 24, 2018, and May 8, 2018. (April 25, 2018 Remedial Proposal, attached as Ex. G to Defs.' CSF, ECF No. 55-8;

May 8, 2018 Meeting Minutes, attached as Ex. N to Defs.' CSF, ECF No. 55-15).  There is no evidence before the Court at this time that the State either accepted or rejected HTI's proposals at either meeting.

On May 11, 2018, the State suggested HTI and BCP "pursue all options available to remediate the couplers."  (May 8, 2018 Meeting Minutes, attached as Ex. N to Defs.' CSF, ECF No. 55-15). On May 15, 2018, BCP Construction directed HTI to "submit your remedial plan that meets contractual requirements and is compliant with any & all buildings codes, once received BCP Construction will expedite its review and submit to [the State] on [HTI's] behalf."  (May 15, 2018 Email Exchange p. 38, attached as Ex. Q to Defs.' CSF, ECF No 55-18).  BCP Construction terminated HTI's Subcontract later that day.

Viewing the evidence in the light most favorable to the non-movants, there is a genuine dispute regarding whether BCP Construction's termination of the Subcontract was legitimate given HTI's efforts to commence and continue correction of the alleged default.  (Subcontract art. 13, attached as Ex. B to Defs.' CSF, ECF No. 55-3).

**B.   There Is A Genuine Dispute Of Fact Regarding Liberty Mutual's Good Faith In Issuing The July 31, 2018 $2,448,206.40 Bond Buy-Back Payment**

Once a determination of liability is made, a surety is limited to making a reasonable disbursement.  <u>Hawaiian Ins. &</u>

25

Guar. Co., 675 P.2d at 769; Developers Sur. & Indem. Co. v. DKSL, LLC, 2018 WL 1177918, at *6 (D. Haw. Mar. 6, 2018) (holding that the amount demanded by a surety under an indemnity provision must be reasonable). Indemnitor Defendants argue that even if HTI was properly terminated, summary judgment is improper because there is a genuine dispute of fact regarding whether the July 31, 2018 Bond Buy-Back payment was reasonable.

At the time of the default, BCP Construction had paid HTI $2,701,697.40 of the $3,153,491 Subcontract, leaving $451,793.60 left to complete the project. (Bond Buy-Back Agreement ¶ 3, attached as Ex. 7 to Pl.'s CSF, ECF No. 45-8). BCP Construction estimated that the actual cost to complete HTI's Subcontract and to amend HTI's errors would be $2,900,000. (Bond Buy-Back Agreement ¶ 4, attached as Ex. 7 to Pl.'s CSF, ECF No. 45-8).

Liberty Mutual and HTI both offered their own estimates of what it would cost to complete the remainder of the Subcontract. HTI estimated that it could have completed the remainder of its work for the outstanding $451,793.60 owed on the Subcontract and an additional $120,000 for the remedial and replacement work — a total of $671,793.60. (June 10, 2018 HTI Remediation Estimate, attached as Ex. Y to Defs.' CSF, ECF No. 55-26; August 15, 2018 HTI Remediation Estimate, attached as Ex. II to Defs.' CSF, ECF No. 55-36). Liberty Mutual presented BCP Construction with a $1,201,793.06 proposal to correct HTI's faulty work and complete the remaining scope of the Subcontract. (July 3, 2018 Internal

26

Email, attached as Ex. HH to Defs.' CSF, ECF No. 55-35).

Liberty Mutual states that on July 31, 2018, it agreed to a Bond Buy-Back payment of $2,448,206.40. (Bond Buy-Back Agreement, attached as Ex. 7 to Pl.'s CSF, ECF No. 45-8). According to the Bond Buy-Back Agreement, the amount of Liberty Mutual's payment to BCP Construction was determined by accepting BCP Construction's full $2,900,000.00 estimate and subtracting the outstanding $451,793.60 unpaid balance of the Subcontract. (Bond Buy-Back Agreement ¶¶ 3-4, attached as Ex. 7 to Pl.'s CSF, ECF No. 45-8). Per the terms of the Indemnity Agreement, Defendants have the burden of presenting evidence demonstrating Liberty Mutual's payment was unreasonable. (General Agreement of Indemnity, attached as Ex. 1 to Pl.'s CSF, ECF No. 45-2).

Liberty Mutual's recovery was specifically limited to the reasonable cost of completing HTI's performance under the Subcontract. (Bonds, attached as Ex. 4 to Pl.'s CSF, ECF No. 45-5). A Surety does not act in good faith if it attempts to recover for claims outside the scope of the indemnity agreement. Great Am. Ins. Co. v. Roadway Eng'g Works, Inc., 2016 WL 5157651, at *4 (E.D. Cal. Sept. 21, 2016). The parties agree that there was conflict and confusion throughout the project about the scope of HTI and the other subcontractors' contracts. (June 26, 2018 Investigation Letter at p. 1, attached as Ex. Z to Defs.' CSF, ECF No. 55-27). The parties continue to dispute the scope of HTI's contract with regards to the conduit coupler issue. There

is a genuine dispute of fact regarding the scope of HTI's
Subcontract.  Given that the reasonableness of Liberty Mutual's
payment is limited by the scope of the Subcontract, the Court
cannot conclude as a matter of law that Liberty Mutual's payment
was reasonable.

Statements made by Liberty Mutual's Surety Claims Counsel,
Luis Aragon, create a further question of fact regarding the
reasonableness and good faith of Liberty Mutual's Bond Buy-Back.
Aragon stated in an internal email discussing the Bond Buy-Back
that Liberty Mutual had received an estimate from BCP
Construction that "was actually a corrective scope for the entire
project, and not just [HTI's] work."  (July 3, 2018 Internal
Email, attached as Ex. HH to Defs.' CSF, ECF No. 55-35).
Payments made for work beyond the scope of HTI's subcontract
would not appear to be reasonable and therefore not recoverable.
The Court is unable to conclude that BCP Construction's estimate
was ever amended to reflect only appropriate, in-scope work or
whether the $2,900,000 proposal accepted by Liberty Mutual was
the unreasonable estimate referred to in this email.

On a motion for summary judgment the evidence is viewed in
the light most favorable to the non-movant.  State Farm Fire &
Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).  While
the moving party need not produce any evidence at all on matters
for which it does not have the burden of proof, it must show that
there is no genuine issue of material fact and that it is

entitled to judgment as a matter of law.  <u>Celotex</u>, 477 U.S. at
325.

There are multiple genuine disputes of fact regarding the
propriety of Liberty Mutual's Bond Buy-Back.  The statements of
Liberty Mutual's Surety Claims Counsel call into question whether
BCP Construction's estimate, which Liberty Mutual accepted in
full, was limited to the reasonable cost of completing work
exclusively within the scope of HTI's Subcontract.  The scope of
HTI's Subcontract was debated throughout the life of the
subcontract and continues to be disputed by the parties in this
lawsuit.

Viewing the evidence in the light most favorable to the non-
movant, there is a genuine question as to whether Liberty Mutual
was aware its July 2018 Bond Buy-Back payment might be used for
out-of-scope work for which it could not be liable.  A trier of
fact could find that Liberty Mutual's acceptance of BCP's
$2,900,000 estimate was unreasonable given the lack of clarity
about the scope of HTI's work and the cost to complete that work.

There is a genuine dispute as to whether the amount of the
Bond Buy-Back was reasonably limited to cover only in-scope work
for which Liberty Mutual faced potential liability under the
Bonds.

**C.  There Is A Genuine Dispute Of Fact Regarding Liberty Mutual's Good Faith In Issuing The June 14, 2019 $630,284.60 Settlement Payment**

In March 2018, BCP Construction made a demand for Liberty Mutual to make a second payment on HTI's Bonds.  (March 21, 2019 BCP Construction Demand Letter, attached as Ex. 10 to Pl.'s CSF, ECF No. 45-11).  The State of Hawaii declared BCP Construction in default on its contract on April 10, 2019.  (April 12, 2019 Travelers Demand Letter, attached as Ex. 11 to Pl.'s CSF, ECF No. 45-12).  Subsequently, BCP Construction's surety, Travelers Casualty and Surety Company of America ("Travelers"), stepped in for BCP Construction and continued to demand further payment from Liberty Mutual.  (Id.)

In June of 2019, Liberty Mutual made a further payment of $630,284.60 on HTI's Bonds.  Liberty Mutual seeks reimbursement from the Indemnitor Defendants for its June 2019 payment. Indemnitor Defendants argue that there are genuine disputes of fact regarding the reasonableness of Liberty Mutual's payment.

An indemnity agreement allows for a surety to make reasonable disbursements.  Williston on Contracts, § 61:61 (4th Ed. 2018); Developers Sur. & Indem. Co., 2018 WL 1177918, at *6; Hawaiian Ins. & Guar. Co., 675 P.2d at 769.  Reasonableness is a question of law suitable for summary judgment when the facts are undisputed and where there is no issue for the jury.  Willis, 304 P.3d at 637.

Indemnitor Defendants argue that Liberty Mutual's two payments on the Bonds, totaling $3,078,491, were unreasonable given the amount of the Subcontract left to be completed. HTI estimates that when they were removed from the project approximately $2.5 million of the work called for under the Subcontract had been completed. HTI maintains the scope of the work to be finished, including remediating any past work, could be done for $671,793.60. (June 10, 2018 HTI Remediation Estimate, attached as Ex. Y to Defs.' CSF, ECF No. 55-26; August 15, 2018 HTI Remediation Estimate, attached as Ex. II to Defs.' CSF, ECF No. 55-36).

Indemnitor Defendants' allegation that Liberty Mutual paid an unreasonable amount on the Bonds is supported by an audit Liberty Mutual conducted on its first Bond payment. In February 2019, before agreeing to make further payments on the Bonds, Liberty Mutual rehired their construction consultant, Vertex, to audit the July 31, 2018 $2,448,206.40 Bond Buy-Back payment. (February 19, 2019 Vertex Audit Report, attached as Ex. JJ to Defs.' CSF, ECF No. 55-37). According to Vertex's audit report, BCP Construction had improperly used Liberty Mutual's payment for a variety of materials and labor outside the scope of HTI's contract and therefore outside the scope of the Bond Buy-Back Agreement. (Id. at pp. 6-12). Vertex's report indicated that of the $1,774,707.01 already spent by BCP Construction, at least $1,031,667.69 was spent on work outside of HTI's scope. (Id. at

p. 13).

Liberty Mutual was in possession of Vertex's report, alleging misallocation of funds, when Travelers made its demand for additional payment. It is unclear why Liberty Mutual agreed to make a further $630,284.60 payment. (June 14, 2019 Settlement Agreement, attached as Ex. 12 to Pl.'s CSF, ECF No. 45-13).

There is a genuine dispute of fact about the reasonableness of Liberty Mutual's additional June 2019 payment of $630,284.60.

### D. Alternative Alleged Disputes of Fact

#### 1. Alternative Sources of Default

Indemnitor Defendants argue that Liberty Mutual wrongly found HTI in default for breaches related to Unistruts and cable splicing for which HTI did not receive pre-termination notice. Indemnitor Defendants claim that it was improper for Liberty Mutual to base a finding of default on breaches for which HTI was never given the requisite notice.

There is evidence that Liberty Mutual's investigation did consider sources of default other than the conduit couplers. (June 26, 2018 Investigation Letter at p. 6, attached as Ex. Z to Defs.' CSF, ECF No. 55-27). The investigation letter references alternate sources of default including improper cable splicing and faulty installation of Unistruts. (Id.) Though it considered alternate breaches, Liberty Mutual ultimately found that "the incorrect conduit couplings issue, by itself, is so

significant as to constitute a material breach" and default of the Subcontract. (Id.)

Liberty Mutual did not rely on the alleged Unistrut and cable splicing defaults in their finding of default.

## 2. Termination Under Article 14

Indemnitor Defendants allege BCP Construction breached the Subcontract by citing Article 13 rather than Article 14 of the Subcontract in its termination letter to Liberty Mutual.

Article 14 allows BCP Construction to terminate HTI "with or without cause." (Subcontract art. 14, attached as Ex. B to Defs.' CSF, ECF No. 55-3). Article 13 defines the process BCP Construction must take to terminate the Subcontract for default.[8] (Id. at art. 13).

On May 15, 2018, BCP Construction sent a letter to Liberty Mutual declaring HTI in default and terminating the Subcontract. (May 15, 2018 Termination Letter, attached as Ex. 6 to Pl.'s CSF, ECF No. 45-7). In the letter, BCP Construction cited Article 14 of the Subcontract as its source of termination. (Id.) Despite

---

[8] "ARTICLE THIRTEEN-RECOURSE BY CONTRACTOR: If subcontractor persistently or repeatedly fails or neglects to carry out the work in accordance with the contract documents, or otherwise fails to perform in accordance with this subcontract, and fails within three days after receipt of written notice to commence and/or continue correction of such default or neglect with diligence and promptness, contractor may, one (1) days after receipt by subcontractor of an additional written notice, and without prejudice to any other remedy...terminate the subcontract." (Subcontract art. 13, attached as Ex. B to Defs.' CSF, ECF No. 55-3).

the reference to Article 14, there is no question that BCP Construction intended to terminate HTI for default. The termination letter sent to Liberty Mutual declares HTI "in default and in breach of said sub contract" and proceeds to list twelve alleged sources of HTI's default. (Id.)

In its investigation, Liberty Mutual explicitly considered the validity of the termination pursuant to the terms of Article 13. (June 26, 2018 Investigation Letter at n. 5, attached as Ex. Z to Defs.' CSF, ECF No. 55-27).

There is no genuine dispute that HTI was terminated according to Article 13 of the Subcontract and that Liberty Mutual investigated the termination as such.

### E.    Conclusion

The Court finds that there are genuine factual disputes regarding whether Liberty Mutual acted in good faith in determining it faced potential liability for HTI's alleged default.

The Court finds further genuine and material factual disputes exist regarding whether the amount of Liberty Mutual's disbursements to BCP Construction were reasonable and made in good faith.

Plaintiff's Motion for Partial Summary Judgment on Count I (Breach of Contract) is **DENIED.**

## II. Unjust Enrichment

Unjust enrichment is an improper claim where there exists a valid written contract upon which relief can be granted. <u>Velasco v. Sec. Nat'l Mortg. Co.</u>, 2011 WL 2117008, at *11 (D. Haw. May 24, 2011); <u>Caraang v. PNC Mortg.</u>, 795 F. Supp. 2d 1098, 1118 (D. Haw. 2011), amended in part, 2011 WL 9150820 (D. Haw. July 6, 2011), and aff'd, 481 F. App'x 362, 363 (9th Cir. 2012).  There is no dispute that the Subcontract, Agreement, and Bonds--all express written contracts--govern this dispute and can provide the appropriate relief.

Plaintiff's Motion for Partial Summary Judgment is **DENIED** as to Count II (Unjust Enrichment).

## III. Quia Timet

The doctrine of quia timet "allows the surety to prevent the principal from dissipating...funds if the surety knows it will be called upon to 'pay the debt or perform the obligation' on the bond, suspects that the principal has some or all of the necessary funds to do so, and fears that the principal may abscond with those funds." <u>Liberty Mut. Ins. Co. v. Sumo-Nan LLC</u>, 2015 WL 2449480, at *12 (D. Haw. May 20, 2015) (quoting <u>Am. Contractors Indem., Co. v. Bigelow</u>, 2011 WL 5546052, at *10 (D. Ariz. Apr. 11, 2011)).

To succeed on a claim of quia timet, a surety must provide evidence that it has "reasonable grounds for anticipating that

[its] rights are being jeopardized and that [it] will incur a liability by threatened conduct of the principal." <u>Milwaukie Const. Co. v. Glens Falls Ins. Co.</u>, 367 F.2d 964, 966 (9th Cir. 1966).

District of Hawaii Local Rule 56.1(a) requires that a summary judgment movant detail "each material fact" about which it contends there is no genuine dispute. District of Hawaii Local Rule 56.1(f) clearly states that the Court will only review the portions of exhibits "specifically identified in the concise statements."

Liberty Mutual did not identify facts or exhibits related to its quia timet claim in its concise statement of facts as required by the Local Rules. (Pl.'s CSF, ECF No. 45). Plaintiff's Motion for Partial Summary Judgment is **DENIED** as to Count III (Quia Timet).

//

//

//

//

//

//

//

//

//

**CONCLUSION**

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I, II, AND III, OF THEIR COMPLAINT (ECF. No. 44) is **DENIED**.

IT IS SO ORDERED.

DATED: March 24, 2020, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation v. HAWAIYA TECHNOLOGIES, INC.; PAUL SCHULTZ, an individual; MUN-WON CHANG, an individual; PAUL SCHULTZ, as Co-Trustee of the Paul S. Schultz Revocable Trust; MUN-WON CHANG, as Co-Trustee of the Paul S. Schultz Revocable Trust; PAUL SCHULTZ, as Co-Trustee of the Mun-Won Chang Revocable Trust; MUN-WON CHANG, as Co-Trustee of the Mun-Won Chang Revocable Trust; JANE WON-IM CHANG, as Co-Trustee of the Jane Won-Im Chang Revocable Trust; PAUL SCHULTZ, as Co-Trustee of the Jane Won-Im Chang Revocable Trust; MUN-WON CHANG, as Co-Trustee of the Jane Won-Im Chang Revocable Trust; Civil No. 18-00410 HG-WRP; **ORDER DENYING PLAINTIFF LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 44)** 37